## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEARA NIEVES**, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>**LYFT, INC.**, a corporation<br><br>              Defendants. | Civil Action No.:<br><br>          <u>**Civil Action**</u><br><br>    **CLASS ACTION COMPLAINT**<br><br>      ***Jury Trial Demanded*** |

Keara Nieves ("Plaintiff" or "Nieves"), by and through her counsel, alleges the following on behalf of herself and those similarly situated:

<u>**INTRODUCTION**</u>

1.      Lyft, Inc. ("Defendant" or "Lyft") provides a mobile phone application that allows consumers (Rider or Riders) to obtain transportation services from Lyft's drivers (Lyft Driver or Lyft Drivers). Plaintiff brings this nationwide putative class action lawsuit on behalf of herself and a class of similarly situated Lyft Drivers who had or have contracts with Lyft to receive a portion of the fare Lyft charges customers, that is, the fare charged the rider less Lyft's applicable commission fee, and any applicable charges such as service fees, cancellation fees, damage fees. tolls, surcharges, and taxes, but who did not receive the contracted driver's fee, and who opted out of arbitration.

2.      When a Rider books a ride, Lyft charges the Rider based on its estimate of the time and distance of the ride and other variables such as the size of the vehicle

requested, whether the Rider wishes to pool the ride with other riders, whether the ride takes place during periods of high demand (Prime Time) and/or if multiple stops are requested.

3.     Lyft contractually promises through its Lyft Terms of Service agreement ("the "LTS"), a copy of which is attached as Exhibit A, that it will provide its Lyft Drivers the fare it charges riders (plus tips if applicable) less Lyft's service fee or "Commission" for creating, maintaining, and marketing the Lyft Platform matching Lyft Drivers to Riders who seek to be transported from one location to another, and any applicable charges such as service fees, cancellation fees, damage fees. tolls, surcharges, and taxes. The Commission taken by Lyft is typically 20% or 25% of the fare depending on when the driver contracted with Lyft.  Lyft, however, does not pay the Lyft Drivers these promised amounts. Instead, it charges Riders a higher fare than what it informs the Lyft Drivers the Rider was charged thereby denying Lyft Drivers the true and accurate amount of money they should be paid while at the same time unjustly enriching itself.

4.     Upon information and belief, underpayments by Lyft to its Lyft Drivers is systemic and occurs because Lyft's charge to the rider is based on an estimation of the time and distance it will take to complete the ride while at the same time it pays the Lyft Drivers based on a separate fare calculation reflecting actual miles and minutes driven. Because Lyft does not calculate the Lyft Drivers payment based on the actual fare charged to the Rider as is required by the terms of the LTS, Lyft is paying Lyft Drivers less than what they are contractually entitled to receive.

5.     For example, assume that a Lyft Driver is contractually entitled to 80% of the gross fare (what the customer is charged for the ride). Further to this example,

assume Lyft charges the Rider a Fare of $50.00.  Under that part of the LTS governing payment to Lyft Drivers, the Lyft Driver would contractually be entitled to $40 (80% of $50). But instead of paying the Lyft Driver $50, Lyft waits until the end of the ride and informs the Lyft Driver the fare was $45 and pays the Lyft Driver based on this amount less the 20% Lyft Commission, in other words, pays the driver $36, not the $40 the driver was entitled to receive.  Here, Lyft is depriving the Lyft Driver $4.00 while at the same time wrongfully pocketing this amount in breach of the LTS.

## PARTIES

6.      Nieves is a resident of Long Branch, New Jersey. Nieves has been a Lyft Driver and Lyft Plus[1] driver since 2016.

7.      Lyft is a Delaware corporation with its corporate headquarters and primary place of business in San Francisco, California, and operates in at least 33 other states in the United States.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are diverse. Plaintiff is a citizen of the State of New Jersey and Defendants are citizens of the State of Delaware.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, there is minimal diversity of citizenship between Plaintiff and Defendants, and the class consists of more than 100 members.

_____

[1] Lyft Plus is a car that seats 6 or more passengers, and is more expensive than a Lyft ride.

10.     This Court has personal jurisdiction over Lyft pursuant to <u>Fed. R. Civ. P.</u> 4 because it does business in the State of New Jersey.

11.     Plaintiff alleges on information and belief that: (1) each Defendant acted in all manners relevant to this action as the agent of the other Defendant and carried out joint business plans and operations; and (2) the acts and omissions of each Defendant are legally attributable to the other Defendant.

<u>**FACTUAL ALLEGATIONS**</u>

12.     Lyft is a "ridesharing" business that originated in San Francisco, California in 2012, and portrays itself – in contrast to its prime competitor Uber – as an egalitarian, community-minded company with friendly Lyft Drivers whom Lyft values more and treats better than the drivers at Uber. Though promoting this image, Lyft has engaged in a pattern and practice of misrepresenting the true fares of rides to Lyft Drivers and of breaching the LTSs they entered with Lyft Drivers by failing to pay Lyft Drivers  amounts they are contractually entitled to receive.

13.     Lyft provides Riders with transportation by connecting them with Lyft Drivers through a mobile phone application (the "Lyft App") so long as the Riders agree to the terms of the LTS which they enter on their mobile phone. The Lyft App allows Riders to summon, arrange, and pay for transportation services electronically through their mobile phones. The Lyft App sets the fare to be paid by the Rider. Payment for transportation arranged through the Lyft App is made via the Riders' credit card accounts to Lyft, after the consumer provides the necessary credit card information to Lyft.

14.     Section 4 of the LTS provides that, "As a Rider, you agree to pay the amounts charged for your use of the Lyft Platform and Services ("Charges").  Fares and other applicable fees, tolls, surcharges, and taxes as set forth on your market's Lyft Cities page (www.lyft.com/cities), plus any tips to the Driver that you elect to pay. Lyft has the authority and reserves the right to determine and modify pricing by posting applicable pricing terms to your market's Lyft Cities page. *** "

15.     Section 4 of the LTS goes on to explain that there are two types of fares, variable and quoted, as well as a prime-time (high volume) premium, if applicable:

- **"Variable Fares.**  Variable fares consist of a base charge and incremental charges based on the duration and distance of your ride.  For particularly short rides, minimum fares may apply. Please note that we use GPS data from your Driver's phone top calculate the distance traveled on your ride. We cannot guarantee the availability or accuracy of GPS data.  ***

- **Quoted Fares.**  In some cases, Lyft may quote you a Fare at the time of your request. The quote is subject to change until the Ride request is confirmed. *** Lyft does not guarantee that the quoted fare will be equal to a variable fare for the same ride.

- **Prime Time.**  Fares may be subject to a multiplier at times of high demand of the Services ("Prime Time") as determined by Lyft.  *** "

16.     Section 4 of the LTS also informs Riders that they may be assessed other charges such as a service fee (to support the Lyft Platform and related services), cancellation fee, damage fee, tolls, surcharges (such as airport fees, state or local fees, event fees). If the Rider elects to, he or she may tip the Lyft Driver (in cash or through the Lyft App.).

17.     Section 5 of the LTS governs payments to Lyft Drivers.   The first paragraph of Section 5 states that, "All Fare payments are subject to a Lyft Commission ... You will also receive any tips provided by Riders to you and tips will not be subject to any Lyft Commission. ***"     Since entering the LTS, Plaintiff has understood this to mean that a Lyft Rider is contractually entitled to the full fare Lyft charges the Rider (plus tips if applicable) less Lyft's Commission and any applicable charges such as service fees, cancellation fees, damage fees. tolls, surcharges, and taxes.

18.     Section 5 of the LTS also explains under the subpart entitled **Commission** that, "In exchange for permitting you to offer your Services through the Lyft Platform and marketplace as a Driver, you agree to pay Lyft (and permit Lyft to retain) a fee based on each transaction in which you provide Services (the "Commission").  The amount of the applicable Commission will be communicated to you in a Commission schedule through the Driver portal. Lyft reserves the right to change the Commission at any time in Lyft's discretion based upon local market factors ..."

19.     Under Section 5 of the LTS, Lyft also reserves the right to set the prices on the Lyft Drivers behalf for all Charges that apply to the Services rendered by the Lyft Drivers.

20.     Under Section 5 of the LTS, Lyft's right to adjust or withhold all or a portion of fares is limited to situations where it believes that, "(i) you [the Driver] have attempted to defraud or abuse Lyft or Lyft's payment systems, (ii) in order to resolve a Rider Complaint (e.g., you took an inefficient route or failed to properly end a particular instance of Services in the Lyft application when the rider was over).  Lyft's decision to adjust or withhold the Fare in any way shall be exercised in a reasonable manner."

21.     Under Section 21 of the LTS, its interpretation is to be governed by the Laws of the State of California without regard to choice of law principles.

22.     Based on her reading of the LTS and contractual provisions referenced in the preceding paragraphs, Plaintiff's understanding since she entered into the LTS with Lyft is that she would be paid by Lyft an amount equal to the fare it charged the rider less Lyft's "Commission" percentage (20% or 25% of the fare, the applicable percentage being based on when the driver contracted with Lyft) and any applicable service fee, cancellation fee, damage fee, tolls, and/or surcharges for each ride she successfully completed.

23.     However, Lyft pays its Lyft Drivers based on a calculation of the distance and time driven. This creates a discrepancy between the fare charged to Riders and the amount that Lyft improperly uses as a basis for paying Lyft Drivers, a discrepancy that Lyft conceals from Lyft Drivers like Plaintiff. But a reasoned reading of the LTS indicates that the fare charged to Riders should be the same fare used to calculate the Driver's fee, i.e., an amount equal to the fare Lyft charged the Rider less Lyft's "Commission" percentage and any applicable charges such as service fees, cancellation fees, damage fees, tolls, and/or surcharges.  Because Lyft has used a fare to calculate the Lyft

Driver's fee different from the fares it charged Riders, Lyft has breached the terms of the LTS it entered with Plaintiff and those similarly situated Lyft Drivers i.e., the putative class members she seeks to represent.

24.     Section 17 of the LTS entitled "Dispute Resolution and Arbitration Agreement" states, in part, that any dispute which may arise between Lyft and Lyft Drivers pertaining to the terms and conditions of the LTS are to be resolved solely resolved through the mechanism of arbitration <u>unless</u> the Lyft Driver has chosen to opt out of arbitration as permitted under Section 17 (j) of the LTS.

25.     Plaintiff Nieves timely notified Lyft of her decision to opt out of arbitration thereby preserving her right to pursue the claims asserted in this Complaint both individually and behalf of all other similarly situated Lyft Drivers who likewise opted out of arbitration.

<u>CLASS ACTION ALLEGATIONS</u>

26.     Plaintiff commences this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including Rule 23(b)(3), on behalf of the following class:

> All persons nationwide who entered contracts with Lyft to provide transportation services to customers (riders) of Lyft in exchange for a portion of the fare Lyft charges riders, to wit, the fare charged the rider (plus tips if applicable) less applicable charges such as service fees, cancellation fees, damage fees, tolls, surcharges, taxes, and who opted out of arbitration.

27.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; government

entities or agencies, their affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

28.     **Numerosity**: The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of such persons is unknown because the data required to calculate that number is presently within the sole possession, custody, and control of Defendants. Upon information and belief, there are thousands of Lyft Drivers who are not subject to arbitration.

29.     **Commonality**: There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including, but not limited to, the following:

  a. Whether, under California law, which applies to all Lyft Drivers pursuant to the LTS's choice-of-law clause, Lyft breached the terms and conditions of the LTS applicable to all Lyft Drivers;

  b. The proper measure of damages and the proper measure of restitution recoverable by Class members; and

  c. Additional common questions of law and fact as developed during the discovery phase of this litigation.

30.     **Typicality**: Plaintiff's claims are typical of the claims of the Class, as such claims could be alleged by any member of the Class, and the relief Plaintiff seeks is typical of the relief that Class members seek. All the Class members were subject to the same pattern and practice of Defendant as alleged herein. Defendant's corporate-wide

policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of the Defendants.

31.     **Adequacy of Representation**: Plaintiff can fairly and adequately protect the interests of the Class and has no interests adverse to the Class. At all relevant times, Plaintiff and the class members are and have been similarly situated and have been subject to the Agreement and Addendum.

32.     **Superiority**: Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The losses, injuries, and damages are small as relevant to a class action analysis, such that without class treatment, individual action by each Class member would be cost-prohibitive.

33.     The Class members are also readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are known to Defendants. The number and identity of the Class members are determinable from the records of Defendants.

34.     The representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience

to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

35.    Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

36.    Defendant Lyft executed the LTS. Through this agreement, Defendant procured the driving services of Plaintiff and the Class (Lyft Drivers). These driving services constitute adequate consideration and Plaintiff and the Class have performed the driving services outlined in these agreements.

37.    Based on her reasonable reading of the LTS and specifically the contractual provisions referenced in the preceding paragraphs, Plaintiff's understanding since she entered into the LTS with Lyft is that she would be paid by Lyft an amount equal to the fare it charged the Rider (plus tips if applicable) less Lyft's "Commission" percentage (20% or 25% of the fare, the applicable percentage being based on when the driver contracted with Lyft) and any applicable charges such as service fees, cancellation fees, damage fees, tolls, and/or surcharges for each ride she successfully completed.

38.    However, Lyft pays its Lyft Drivers based on a calculation of the distance and time actually driven. This creates a discrepancy between the fare charged to Riders

and the amount that Lyft improperly uses as a basis for paying Lyft Drivers, a discrepancy that Lyft conceals from Lyft Drivers like Plaintiff. Nonetheless, a reasoned reading of the LTS reflects that the fare used to calculate the Lyft Driver's fee, i.e., an amount equal to the fare it charged the rider less Lyft's "Commission" percentage and any applicable charges such as service fees, cancellation fees, damage fees, tolls, and/or surcharges, should be based on the fare Lyft charged the Rider.  Because Lyft has used fares to calculate the Lyft Driver's fee different from the fares it charges Riders, Lyft has breached the terms of the LTS it entered with Plaintiff and those similarly situated putative class members she seeks to represent.

39.    As a direct, proximate, and foreseeable result of Defendant Lyft's breach of the LTS, Plaintiff and the Class have been damaged in an amount to be determined according to proof at the time of trial.

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40.    Plaintiff herein incorporates paragraphs 1 through 39 and the First Count of the Complaint as if fully set forth herein.

41.    Defendant Lyft's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant requires that neither party to a contract will do anything that injures the right of the other to receive the benefits of the contract.

42.    Defendant Lyft has entered into agreements with Plaintiff and the Class members by which Plaintiff and the Class members provide driving services for a portion of the fare paid by Riders, i.e., Plaintiff would be paid by Lyft an amount equal to

the fare it charged the rider less Lyft's "Commission" percentage (20% or 25% of the fare, the applicable percentage being based on when the driver contracted with Lyft) and any applicable charges such as service fees, cancellation fees, damage fees, tolls, and/or surcharges for each ride she successfully completed

43.     Defendant Lyft, by charging a greater fare to Riders than the calculation used to determine payment to Lyft Drivers, has unfairly frustrated the right of Plaintiff and the Class members to receive the full benefits they are entitled to under the LTS.

44.     Defendant Lyft's failure to inform Plaintiff and similarly situated Lyft Drivers that the the amount being represented to them as the full fare charged the Riders was not in fact the full fare, but rather an amount less than what the Rider was charged, serves as a willful and intentional deception by Lyft not expressed by, reserved in, and/or otherwise contemplated by the terms and conditions of the LTS, and by not sharing this fare information with the Lyft Drivers, Lyft unfairly frustrated the right of Plaintiff and the Class members to receive the full benefits they are entitled to under the LTS.

45.     As a direct, proximate, and foreseeable result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have been damaged in an amount to be determined according to proof at the time of trial.

## COUNT III

## FRAUD

46.     Plaintiff herein incorporates paragraphs 1 through 39 and the First and Second Counts of the Complaint as if fully set forth herein.

47.     Defendant Lyft's failure to inform Plaintiff and similarly situated Lyft Drivers that the amount being represented to them as the full fare charged the Riders was not in fact the full fare, but rather an amount less than what the Rider was charged, was a willful and intentional misrepresentation of fact made with the intent that Plaintiff and the Class rely on same.

48.     Plaintiff and the Class entered into the LTS and performed services thereunder in reliance on the representations made by Lyft that it would pay them an amount equal to the fare it charged the rider less Lyft's "Commission" percentage (20% or 25% of the fare, the applicable percentage being based on when the driver contracted with Lyft) and any applicable charges such as service fees, cancellation fees, damage fees, tolls, and/or surcharges for each ride she/they successfully completed

49.     As a direct, proximate, and foreseeable result of Defendant's misrepresentations, Plaintiff and the Class have been defrauded of sums of moneys in amounts to be determined according to proof at the time of trial.

## COUNT IV

### UNJUST ENRICHMENT

50.     Plaintiff herein incorporates by reference all the foregoing paragraphs as though fully set forth herein.

51.     Plaintiff pleads this claim in the alternative.

52.     Because of the misconduct described herein, Defendant Lyft has been unjustly enriched and has received and retained payments from Lyft Riders beyond those promised in Defendant's' agreement with its Lyft Drivers.

53.     Specifically, Defendant Lyft has retained a larger portion of the passenger fare than they promised they would retain in the LTS.

54.     This unjust enrichment has directly benefitted Defendant Lyft

55.     As a direct, foreseeable, and proximate result of Defendant' Lyft's wrongful actions alleged herein, Plaintiff and Class members have been damaged in an amount to be determined according to proof at the time of trial.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff Keara Nieves, individually and on behalf of the proposed Class and Collective, requests relief against the Defendant as follows:

a.  Certification of the Class;

b.  Designation of Plaintiff as Representative of the Class;

c.  Designation of Plaintiff's counsel of record as Class Counsel for the Class;

d.  An award of damages, in an amount to be determined at trial;

e.  An appropriate service payment to Plaintiff for her service as Class Representative;

f.  Reasonable attorneys' fees and costs of this action, including expert fees;

g.  Pre-judgment and post-judgment interest as provided by law;

h.  An injunction against Lyft and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law from, engaging in each of the unlawful practices, policies and patterns set forth in this Complaint;

i.  Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all claims so triable.

MASHEL LAW, L.L.C.
Attorneys for Plaintiff Keara Nieves
and the Proposed Class

Dated: August 15, 2017

_____
STEPHAN T. MASHEL, ESQUIRE